IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CURTIS HEADRICK, )
)
        Plaintiff )
)
v. ) Civil Action No. 14-978
)
CAROLYN W. COLVIN, )
ACTING COMMISSIONER OF )
SOCIAL SECURITY, )
)
        Defendant )

## MEMORANDUM AND ORDER OF COURT

AND NOW, this 24th day of September, 2015, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that plaintiff's motion for summary judgment (Document No. 8) be, and the same hereby is, granted and the Commissioner's motion for summary judgment (Document No. 10) be, and the same hereby is, denied. The Commissioner's decision of March 15, 2013, will be vacated and this case will be remanded to the Commissioner for further proceedings consistent with this opinion pursuant to 42 U.S.C. §405(g).

When the Commissioner determines that a claimant is not "disabled" within the meaning of the Act, the findings leading to such a conclusion must be based upon substantial evidence. "Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citation omitted).

Despite the deference to administrative decisions required by this standard, reviewing courts "'retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting* Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)). In evaluating whether substantial evidence supports an ALJ's findings, "'leniency [should] be shown in establishing the claimant's disability, and ... the [Commissioner's] responsibility to rebut it [should] be strictly construed ....'" Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003) (*quoting* Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

Plaintiff protectively filed his pending applications for DIB and SSI on September 22, 2011, both alleging a disability onset date of January 1, 2003, due to, *inter alia*, back pain, memory problems, sleep apnea, and panic and anxiety disorders.[1] Plaintiff's applications were denied initially. At plaintiff's request, an ALJ held a hearing on February 26, 2013, at which plaintiff and his girlfriend appeared and testified. On March 15, 2013, the ALJ issued a decision finding that plaintiff is not disabled. On June 20, 2014, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 46 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §§404.1563(c) and 416.963(c). Plaintiff has at least a high school education and has past relevant work experience as a brick mason, but he has not engaged in any substantial gainful activity since his alleged onset date.

---

[1] For purposes of plaintiff's application for DIB under Title II of the Act, the ALJ found that plaintiff last met the insured status requirements of the Act on March 21, 2003. (R. 19). Accordingly, solely for purposes of DIB eligibility, the relevant time period is from plaintiff's alleged onset date of January 1, 2003, to his date last insured of March 31, 2003, and he was required to show that he became disabled prior to that date.

After reviewing plaintiff's medical records and considering the testimony of plaintiff, plaintiff's girlfriend and the vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairments of sleep apnea, degenerative disc disease, arthritis, anxiety disorder, depression, obesity, hepatitis C, history of embolization of a ruptured left anterior communicating artery aneurysm and borderline intellectual functioning, those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed at Appendix 1, 20 C.F.R. Subpart P, Regulations No. 4.

The ALJ also found that plaintiff retains the residual functional capacity to perform light work but with a number of limitations necessary to accommodate his physical and mental impairments.[2] A vocational expert identified numerous categories of jobs which plaintiff can perform based upon his age, education, work experience and residual functional capacity, including collator, inspector/plastics and small parts assembler. Relying on the vocational expert's testimony, the ALJ found that while plaintiff cannot perform his past relevant work, he is capable of making an adjustment to numerous jobs existing in significant numbers in the national economy. Accordingly, the ALJ found that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period

---

[2] Specifically, the ALJ found that claimant has the residual functional capacity to perform light work except: with occasional climbing ropes, ladders and scaffolds, occasional bending, balancing, crouching, stooping, kneeling and crawling; with simple routine tasks involving no more than simple, short instructions and simple work-related decisions with few work place changes; no work at fixed production rate or pace; occasional contact with supervisors, coworkers and the public; avoid concentrated exposure to work place hazards; requires the opportunity to alternate between sitting and standing every two hours with standing and walking a total of six hours in an eight-hour workday; and can work in proximity to but not in coordination with others. (R. 22).

of at least twelve months. 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process[3] for determining whether a claimant is under a disability. 20 C.F.R. §§404.1520 and 416.920. If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; *see* Barnhart v. Thomas, 540 U.S. 20 (2003).

Here, plaintiff raises three challenges to the ALJ's finding of not disabled: (1) the ALJ failed to address the findings and opinions of his treating psychiatrist; (2) the ALJ erred at step 3 by failing to consider whether plaintiff's sleep apnea, in combination with his obesity, meets or equals Listing 3.10; and, (3) the ALJ's residual functional capacity also fails to account for any limitations that may arise from sleep apnea in combination with obesity. Because the ALJ failed to evaluate plaintiff's severe impairment of sleep apnea, alone or in combination with his severe impairment of obesity, at step 3, and also did not consider those severe impairments in combination in assessing plaintiff's residual functional capacity at step 5, this case must be remanded to the Commissioner for further proceedings.

---

[3] The ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past-relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). Additionally, when there is evidence of a disabling mental impairment, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. 20 C.F.R. §§404.1520a and 416.920a; Plummer, 186 F.3d at 432.

At step 3 of the sequential evaluation process, the ALJ must determine whether the claimant's impairment matches, or is equivalent to, one of the impairments listed in appendix 1 of the Regulations. Burnett v. Commissioner of Social Security Administration, 220 F.3d 112, 119 (3d Cir. 2000). The listings describe impairments that prevent an adult, regardless of age, education, or work experience, from performing any gainful activity. Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000); 20 C.F.R. §§404.1520(d) and 416.920(d). "If the impairment is equivalent to a listed impairment then [the claimant] is per se disabled and no further analysis is necessary." Burnett, 220 F.3d at 119.

The ALJ has the burden to identify the relevant listed impairment that compares with the claimant's impairment and must "fully develop the record and explain his findings at step 3, including an analysis of whether and why [the claimant's] ... impairments ... are or are not equivalent in severity to one of the listed impairments." Id. at 120, n.2. However, the burden is on the claimant to present medical findings that show that his impairment matches or is equal in severity to a listed impairment. Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992).

Here, based on the medical evidence, (R. 74-86; 249-251; 277-282; 416-419), the ALJ correctly determined that sleep apnea is a severe impairment at step 2 of the sequential evaluation process. The ALJ also found, based on the medical evidence, (R. 277-282), that plaintiff's obesity is a severe impairment. However, at step 3 the ALJ failed to identify Listing 3.10 as the appropriate listing matching plaintiff's sleep apnea, nor did the ALJ discuss Section 3.00(I) of Appendix 1, which requires the consideration of the combined effects of obesity with sleep apnea in determining whether plaintiff has a listing-level impairment.

Listing 3.10 specifically addresses sleep-related breathing disorders such as sleep apnea, which "are caused by periodic cessation of respiration associated with hypoxemia and frequent

arousals from sleep." §3.00(H). The Listings note that in some individuals the disturbed sleep pattern may cause daytime sleepiness with chronic pulmonary hypertension and/or disturbances in cognitive functioning, which in turn can affect memory, orientation and personality. Id. Listing 3.10 provides that sleep-related breathing disorders should be evaluated under Listing 3.09 (chronic cor pulmonale) *or* Listing 12.02 (organic mental disorders). The regulations recognize that daytime somnolence may be associated with disturbance in cognitive vigilance and that impairment of cognitive function is to be evaluated under Listing 12.02. *See* Appendix 1, §3.00(H).

Here, the court recognizes that the ALJ did determine that plaintiff's mental impairments do not meet the criteria of Listing 12.02 - nor 12.04 or 12.06 - because plaintiff does not satisfy the B criteria of those listings.[4] (R. 20). However, because the ALJ failed to identify Listing 3.10 as the appropriate listing for sleep apnea, nor mention sleep apnea at all in her step 3 analysis, it is unclear whether the ALJ adequately considered any effects of plaintiff's sleep-related breathing disorder in making her determination that plaintiff does not meet Listing 12.02.[5] As already noted, the regulations recognize that "in some individuals the disturbed sleep pattern may cause daytime sleepiness with chronic pulmonary hypertension and/or disturbances in cognitive functioning, which in turn can affect memory, orientation and personality." §3.00(H).

---

[4] The "B" criteria of listings 12.02, 12.04 and 12.06 are identical and require that a claimant's mental impairment must result in at least two of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence or pace; or, 4. Repeated episodes of decompensation, each of extended duration." 20 C.F.R., Part 404, Subpart P, Appendix 1, Listings 12.01B, 12.04B and 12.06B. (emphasis added). Because plaintiff's mental impairments do not result in marked limitations in at least two areas, or one marked limitation in one area along with repeated episodes of decompensation, each of extended duration, the ALJ found that plaintiff does not meet the "B" criteria of 12.02, 12.04 or 12.06.

[5] The Regulations provide that Listing 3.10 can be met under either Listing 12.02 *or* Listing 3.09, which addresses cor pulmonale secondary to chronic pulmonary vascular hypertension. On remand, the ALJ also should make a specific finding as to whether plaintiff does or does not meet Listing 3.10 under 3.09 as well.

AO 72
(Rev. 8/82)

Remand also is necessary in this case because the ALJ never acknowledged SSR 02-1p, which requires consideration of obesity in combination with plaintiff's other severe impairments in determining whether plaintiff meets a listing at step 3, and how it may affect residual functional capacity at step 5. SSR 02-1p recognizes that obesity is a medically determinable impairment and that"the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." Accordingly, the ruling instructs the ALJ "to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." SSR 02-1p; *see also* Appendix 1, §§1.00(Q) and 3.00(I).

Here, despite finding that plaintiff has the severe impairment of obesity at step 2, the ALJ neglected to undertake the appropriate analysis required under SSR 02-1p by determining the effects of obesity either at step 3, in determining whether obesity in combination with plaintiff's other severe impairments meets or equals a listing, or at step 5, in determining plaintiff's residual functional capacity. The ALJ's failure to consider plaintiff's obesity, in combination with her other severe impairments, at either step 3 or 5, constitutes reversible error that necessitates a remand in this case. *See* <u>Diaz v. Commissioner of Social Security</u>, 577 F.3d 500 (3d. Cir. 2009)(remand where ALJ identified obesity as severe impairment but failed to discuss combined effects with other impairments at steps 3 & 5); *see also*, <u>Kobulnicky v. Astrue</u>, 2013 WL 1290955 (W.D.Pa., Mar. 27, 2013) (J.Bloch).

As a result, this court will vacate the decision of the ALJ in this case and remand for further proceedings. On remand the ALJ must comply with SSR 02-1p and specifically must determine at step 3 if plaintiff's obesity in combination with his severe impairment of degenerative disc disease, meets or equals Listing 1.04, and/or in combination with his severe impairment of sleep

apnea, meets or equals Listing 3.10, and also must specifically determine whether obesity in combination with plaintiff's other severe impairments results in any additional restrictions on plaintiff's ability to perform work-related functions at step 5.

In doing so, the ALJ must specifically address all of the relevant medical evidence and explain her reasons for rejecting or discounting any evidence. In particular, the ALJ must explain what impact, if any, the combined effects of plaintiff's obesity with sleep apnea may have on the ALJ's evaluation of the opinion of treating psychiatrist Dr. Shirley John, who noted that plaintiff experiences difficulty in falling asleep, has sleep continuity disturbance occurring as frequently as every one hour, and has early morning awakening, and further noted that plaintiff's energy is poor and that he has no motivation, (R. 249), as well as the report of Dr. Sharan, who suggested that plaintiff's "lethargy is most likely from chronic hepatitis C and untreated sleep apnea." (R. 416). The ALJ, of course, does not have to accept any findings from any medical source, so long as she adheres to the standards set forth in the regulations for evaluating medical evidence, 20 C.F.R. §§404.1527(c) and 416.927(c), and gives some indication of the evidence she rejects and her reasons for rejecting it.[6]

---

[6] The Commissioner attempts to brush aside the ALJ's failure to address the combined effects of plaintiff's obesity and sleep apnea at step 5 by arguing that plaintiff has failed to establish any functional limitations resulting therefrom beyond those already incorporated in the RFC assessment. However, the ALJ expressly found that obesity and sleep apnea are severe impairments, and it is not the province of this court to re-assess plaintiff's residual functional capacity and determine whether there are, or are not, other limitations resulting from the combined effects of these impairments when the ALJ failed to do so in rendering her decision.

Accordingly, for the foregoing reasons, plaintiff's motion for summary judgment will be granted, the Commissioner's motion for summary judgment will be denied, and this case will be remanded to the Commissioner for further proceedings consistent with this opinion.

*Gustave Diamond*
Gustave Diamond
United States District Judge

cc: E. David Harr, Esq.
203 South Main Street
Greensburg, PA 15601

Michael Colville
Assistant United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219